Argued and submitted January 16, decision of Court of Appeals is affirmed; judgment of the circuit court is reversed, and case remanded to the circuit court for further proceedings June 26, 1997

Jerrold W. JONES,
*Petitioner on Review,*

*v.*

GENERAL MOTORS CORPORATION,
a Delaware corporation,
and Wentworth Chevrolet Co.,
an Oregon corporation,
*Respondents on Review.*

(CC 9304-02799; CA A84036; SC S43153)

939 P2d 608

Robert K. Udziela, of Pozzi Wilson Atchison, Portland, argued the cause and filed the petition for petitioner on review. With him on the brief was Helen T. Dziuba.

Charles F. Adams, of Stoel Rives LLP, Portland, argued the cause for respondents on review and filed a brief. With him on the response to the petition was John V. Acosta.

Anthony A. Allen, Salem, and Phil Goldsmith, Portland, filed briefs on behalf of *amicus curiae* Oregon Trial Lawyers Association.

James N. Westwood, of Miller, Nash, Wiener, Hager & Carlsen LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Durham and Kulongoski, Justices.**

DURHAM, J.

---

** Graber, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

This is an action for damages for negligence and strict liability. Plaintiff appeals from a judgment entered after the trial court granted defendants' motion for summary judgment. The dispositive question is whether a 1995 amendment to ORCP 47 C permits entry of a summary judgment for defendants on this record. We agree with the Court of Appeals that defendants are not entitled to a summary judgment, although we disagree with its reason for reaching that conclusion. Accordingly, we affirm the decision of the Court of Appeals, in part on different grounds, reverse the judgment of the circuit court, and remand to the circuit court for further proceedings.

ORCP 47 C, with the 1995 amendment emphasized, provides:

> "The motion and all supporting documents shall be served and filed at least 45 days before the date set for trial. The adverse party shall have 20 days in which to serve and file opposing affidavits and supporting documents. The moving party shall have five days to reply. The court shall have discretion to modify these stated times. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. **No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.** A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Or Laws 1995, ch 618, § 5 (boldface in original).

The parties agree that the 1995 amendment applies to this case. *See* Or Laws 1995, ch 618, § 140(2) ("The amendments to ORCP * * * 47 C * * * apply to all actions, whether commenced before, on or after the effective date [September 9, 1995] of this Act.").

The Court of Appeals' opinion states the facts in detail. *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243 (1996). We summarize here only those facts necessary to explain our disposition on review. Because this is a summary judgment proceeding, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to plaintiff, who is the party opposing the motion. *Double Eagle Golf, Inc. v. City of Portland*, 322 Or 604, 606, 910 P2d 1104 (1996).

Plaintiff, a Portland police officer, developed a permanent illness when he was exposed to a contaminant in the air inside a patrol car furnished to him by the City of Portland (City). Plaintiff's medical records described the condition as a "predisposition to sensitivity to these substances."[1] Defendant General Motors Corporation (GMC) manufactured the car. Defendant Wentworth Chevrolet Co. (Wentworth) sold the car to City in 1991.

City mechanics installed a radio and other electrical equipment in the car by drilling holes in the bulkhead that separated the engine and the passenger compartments. A Wentworth mechanic examined the car, smelled a musty odor, and determined that the odor resulted from water leaking into the passenger compartment through holes drilled in the firewall by City.

A City mechanic, Schenfeld, also examined the car and opined that the leak resulted from a gap in the sealant around the bulkhead below the windshield. He did not agree that the leak resulted from the holes drilled in the bulkhead for electrical wiring. Schenfeld also discovered a white substance growing under the floor coverings as a result of the leak. He said that the white substance caused the odor in the car. After Schenfeld sealed the gap with silicone, there were no further reports of moisture in the car.

Plaintiff alleged that defendants were negligent in distributing the car without a seal adequate to prevent leakage of water into the passenger compartment and in failing to inspect the car adequately. He further alleged that those

---

[1] The Court of Appeals' opinion stated that plaintiff suffered an "allergic reaction," *Jones*, 139 Or App at 264, but the record does not support that statement.

were unreasonably dangerous, defective conditions for which defendants were strictly liable under ORS 30.920.[2]

Defendants moved for summary judgment. They argued, first, that the product liability claim lacked merit because no proof existed that the car was unreasonably dangerous and because the car had undergone a substantial post-sale modification after defendants delivered it to City.[3] Second, defendants argued that plaintiff had no evidence demonstrating that defendants were negligent in manufacturing or selling the car. Third, defendants argued that the court should dismiss both the negligence and product liability claims because plaintiff's injury was an idiosyncratic reaction to a contaminant in the car — a result of his own peculiar sensitivity—and not a reaction that an ordinary consumer would experience. The trial court granted summary judgment to defendants.

---

[2] ORS 30.920 provides, in part:

"(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2) The rule stated in subsection (1) of this section shall apply, even though:

"(a) The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b) The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor."

[3] Modification of a product is a defense to a product liability claim under certain circumstances. ORS 30.915 provides:

"It shall be a defense to a product liability civil action that an alteration or modification of a product occurred under the following circumstances:

"(1) The alteration or modification was made without the consent of or was made not in accordance with the instructions or specifications of the manufacturer, distributor, seller or lessor;

"(2) The alteration or modification was a substantial contributing factor to the personal injury, death or property damage; and

"(3) If the alteration or modification was reasonably foreseeable, the manufacturer, distributor, seller or lessor gave adequate warning."

On appeal, the Court of Appeals reversed. Addressing defendants' first two arguments, the Court of Appeals held that Schenfeld's testimony was sufficient to create a dispute as to a material fact under plaintiff's theories that the car was unreasonably dangerous, that the injury did not result from a post-sale product modification of the car, and that defendants were negligent. *Jones*, 139 Or App at 261-62, 264-65. The parties have not sought review with respect to those issues, and we do not address them further.

We turn to defendants' third argument, *viz.*, that they are not liable for plaintiff's "idiosyncratic" reaction to a contaminant in the car. At the outset, we emphasize that our discussion of that argument should not be mistaken as a holding that such a "defense" exists, under Oregon law, in cases of this kind. In regard to defendants' argument, the Court of Appeals said:

> "Instead, courts construing that 'defense' have recognized it involves a two-step process. First, the defendant has the burden of producing evidence that the plaintiff's injury from use of the defendant's product is the result of an allergic response. Second, after the defendant has satisfied that initial burden of production, the plaintiff bears the burden of proving that his or her reaction, rather than being idiosyncratic, could be experienced by an identifiable class of consumers." *Id.* at 263.

The Court of Appeals held that defendants "satisfied their burden of producing evidence that plaintiff's injuries were the result of an allergic reaction."[4] *Id.* at 264. The court also held that "plaintiff was then obligated to present evidence that his reaction was not idiosyncratic. He failed to do so." *Ibid.* The court reasoned that the 1995 amendment to ORCP 47 C imposed on plaintiff the burden to produce evidence on which a reasonable juror could rely in returning a verdict on the nonidiosyncracy of the allergic response

---

[4] In the Court of Appeals, plaintiff argued that defendants' evidence of plaintiff's condition, consisting of chart notes prepared by plaintiff's physician, was inadmissible. The Court of Appeals concluded that plaintiff had waived that objection. *Jones*, 139 Or App at 264. Plaintiff does not challenge that ruling on review and, accordingly, we do not address it.

because, at trial, plaintiff would bear the burden of persuasion on that issue. The court then remanded the case for further proceedings because plaintiff did not have the opportunity to introduce evidence that would satisfy the burden of persuasion that amended ORCP 47 C imposed. *Id.* at 264-65.

On review, plaintiff argues that the Court of Appeals erred in holding that, under amended ORCP 47 C, plaintiff must produce evidence to establish that his reaction was not idiosyncratic. Plaintiff contends that, under both the prior and amended versions of ORCP 47 C, the moving party has the initial burden to produce evidence establishing that there is no genuine issue of material fact and that that party is entitled to judgment as a matter of law as to all issues. Plaintiff argues that the Court of Appeals incorrectly concluded that the legislature intended to shift the burden of production from the moving party to the nonmoving party when it amended ORCP 47 C.

Our task is to interpret ORCP 47 C to discern the legislature's intent when it amended that rule. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (stating standards for interpreting legislation); ORS 174.010.[5] Specifically, we must determine whether the legislature intended, under the circumstances of a summary judgment proceeding, to shift the burden of production of evidence from the moving party to the adverse party. We first examine the text and context of the statute. *PGE*, 317 Or at 610. As a part of context, this court considers, among other things, other provisions of the same statute, other related statutes, prior versions of the statute, and this court's decisions interpreting the statute. *Id.* at 611 (context includes other provisions of same statute and related statutes); *State ex rel Penn v. Norblad*, 323 Or 464, 467, 918 P2d 426 (1996) (context includes prior versions of the statute); *Gaston v. Parsons*, 318 Or 247, 252, 864 P2d 1319 (1994) (context includes case law interpreting the text of the statute itself and other related statutes). *See also State v. Clevenger*, 297

---

[5] ORS 174.010 provides, in part:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted * * *."

Or 234, 244, 683 P2d 1360 (1984) ("In enacting subsequent legislation, the legislature is considered to be aware of this court's decisions." (citation omitted)).

■ The sentence added to ORCP 47 C in 1995 states:

"No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

The 1995 amendment did not modify the wording of any other part of ORCP 47 C. In summary, the amendment purports to identify a circumstance in which a court, in resolving a summary judgment motion, must conclude that no genuine issue of material fact exists. That circumstance is that, on the record before the court, no objectively reasonable juror could return a verdict for the party who opposes the motion.

We turn to an examination, phrase by phrase, of the amendatory sentence. We note, first, that it incorporates several legal terms and phrases that are well known in Oregon civil procedure. The introductory phrase "[n]o genuine issues as to a material fact exists" is not a separate statement of new substantive law. Rather, it informs the reader that what follows is a description of a circumstance in which a summary judgment motion can meet the substantive law standard set out in the *preceding* sentence of ORCP 47 C, which states:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.)

The phrase in question, in short, introduces and defines the subject addressed in the sentence.

Although the phrase "record before the court" is new to ORCP 47 C, the text and context of that phrase demonstrate that the legislature intended that phrase to serve as a shorthand reference to the documents listed in the preceding sentence of subsection C ("pleadings, depositions, and admissions on file, together with affidavits"). *See Fields v. Jantec,*

*Inc.*, 317 Or 432, 437, 857 P2d 95 (1993) (illustrating that the record before the court, under ORCP 47 C, includes "affidavits and other evidence in support of, and in opposition to," the motion for summary judgment). We perceive no textual basis for concluding that the legislature intended that phrase to expand or contract the scope of the record that the court considers on summary judgment, to alter either party's burden of persuasion or proof, or to modify the court's decision-making standards on summary judgment.

Consistent with the foregoing, the direction in the 1995 amendment that the court shall view the record "in a manner most favorable to the adverse party" also repeats the rule long followed by this court that, in deciding a summary judgment motion, the court is obliged to "review the record on summary judgment in the light most favorable to the party opposing the motion." *Forest Grove Brick v. Strickland*, 277 Or 81, 87, 559 P2d 502 (1977). We perceive in that phrase no substantive change in the law relating to motions for summary judgment.

The phrase "no objectively reasonable juror could return a verdict for the adverse party" also is new to ORCP 47 C, but, like the other phrases already discussed, the concept that that phrase embodies is a familiar one. In *Seeborg v. General Motors Corporation*, 284 Or 695, 700-01, 588 P2d 1100 (1978), this court held that a court may allow a summary judgment motion, due to the absence of a genuine issue as to any material fact for trial, if the record fails to show the existence of a "triable issue," that is, sufficient evidence to entitle a party to a jury determination:

> "In deciding whether a genuine issue of fact exists, courts generally read 'genuine issue' to mean 'triable issue.' Before a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination. This has led both courts and commentators to compare the motion for summary judgment to the motion for a directed verdict. 10 Wright & Miller, *Federal Practice and Procedure* § 2713.

> "* * * * *

"* * * All defendants have to show is that the admitted factual posture of the case is such that plaintiff would not be entitled to a jury determination."

As noted above, *Seeborg* and its progeny are context for the 1995 amendment. Addressing first the phrase "no objectively reasonable juror," we see no distinction of substance in that phrase and the references in *Seeborg* to a "jury." The premise of *Seeborg*'s reference to a "jury" is that the court must deny summary judgment if a hypothetical objectively reasonable *factfinder* could resolve a material dispute as to the facts in favor of the adverse party. In resolving a summary judgment motion, a court would arrive at the same answer whether it inquires, under *Seeborg*, if the record calls for a "jury" determination or asks, instead, under the text of the 1995 amendment, whether "no objectively reasonable juror" could decide the facts against the moving party. Consequently, we conclude that the phrase "no objectively reasonable juror" effects no modification in the substance of ORCP 47 C.

We reach the same conclusion from our analysis of the phrase "could return a verdict for the adverse party" in the 1995 amendment. That phrase embodies the same analytical standard that *Seeborg* employed in stating that a moving party is entitled to summary judgment if, on the record before the court, the adverse party "would not be entitled to a jury determination." *Seeborg*, 284 Or at 701. Stated differently, under both *Seeborg* and the 1995 amendment, summary judgment is appropriate only if the agreed upon facts would compel a jury to return a verdict for the moving party. In reaching our conclusion, we see no ambiguity in either the text or context of the 1995 amendment to ORCP 47 C.

■ Defendants offer a series of propositions that are contrary to our view of the unambiguous meaning of the 1995 amendment to ORCP 47 C. First, they argue that the court is obliged to conclude that the addition of a new sentence to ORCP 47 C necessarily represents a substantive alteration of the meaning of the rule.[6] While that proposition often may be

---

[6] *See Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 597-98, 581 P2d 50 (1978):

true, it is by no means universally so. And where, as here, the text and context show otherwise, the rigid application of defendants' proposition would allow the bare fact of the amendment to overcome what the amendatory text actually *says*.

Defendants next argue that this court is bound to construe the 1995 amendment as a substantive change in law, not a codification of existing rules from case law construing ORCP 47 and its statutory predecessor, ORS 18.105 (1975), because the amendment embodies new analytical criteria that did not exist in the former version of ORCP 47 C. According to defendants, the 1995 rule amendment means that a party opposing a summary judgment motion now bears a burden to produce evidence, sufficient to create an issue of fact, on those issues about which that party would bear a burden of proof at trial. However, our preliminary analysis of the 1995 amendment to ORCP 47 C, in the light of the preexisting rule and judicial interpretations of it, discloses that the sentence added by the 1995 amendment codified, but otherwise effected no substantive change in, the law that obtained under this court's decisions interpreting the preexisting version of ORCP 47 C. We deem it significant that the amendment, by its terms, does not alter the quantum of proof required to support or oppose a motion for summary judgment, shift any evidentiary burden to either party, or modify the standard that governs the court's decision on a motion for summary judgment. As we have indicated, our scrutiny of the amendment ends with its terms, whose meaning we find to be clear.

The parties offer conflicting arguments about *why* the legislature adopted the 1995 amendment to ORCP 47 C.

---

"In the construction of amendatory acts, it is presumed that material changes in language create material changes in meaning. It is also said that a presumption exists that amendatory acts do not change the meaning of preexisting language further than is expressly declared or necessarily implied." (Citations omitted.)

Although that passage in *Fifth Avenue* embodies a correct rule of law, the references to "presumption" in that passage potentially are misleading. The task of interpreting a legislative amendment requires the court to ascertain and declare the substance of the legislative enactment, *see* ORS 174.010 (so stating), not to apply a "presumption" favoring or disfavoring a change in meaning.

We decline to resolve that dispute. Paying heed to ORS 174.010, this court must ascertain and declare what is contained in the amendment. If, as here, the amendment's text is not ambiguous, the parties' disagreement about the legislature's motive for doing what it did is beside the point.

One aspect of the parties' dispute does merit a response. The parties debate whether the legislature, in adopting the 1995 amendment, intended to correct the result in several unreviewed decisions of the Court of Appeals that assertedly depart from the summary judgment standards required by this court's decisions and that this court did not review subsequently. We need not and do not address whether that asserted departure exists.

■ Without question, the legislature is entitled to adopt legislation that modifies the result in Court of Appeals cases (or this court's cases) that interpret and apply rules regarding summary judgment. The legislature need not stay its hand until this court reviews and accepts or modifies the interpretations of such rules by the Court of Appeals. However, the legislature should not assume that an interpretation of a rule regarding summary judgment by the Court of Appeals that contradicts a prior interpretation of the same rule by this court constitutes a change in Oregon law on that point. What is true in *any* case of an asserted conflict in the decisional law of this court and the Court of Appeals also is true in the context of a conflict in the interpretation of the rules that govern a summary judgment motion. In determining the substance of Oregon law on a legal question, the decisions of this court describe the law of this state authoritatively and prevail over conflicting decisions of the Court of Appeals.

Defendants next argue that three 1986 decisions of the United States Supreme Court that interpreted FRCP 56 should influence our construction of the 1995 amendment to ORCP 47 C. The cases are *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 US 574, 106 S Ct 1348, 89 L Ed 2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 106 S Ct 2505, 91 L Ed 2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 US 317, 106 S Ct 2548, 91 L Ed 2d 265 (1986). Defendants contend that those cases are relevant in two respects.

First, defendants assert that, because Oregon's first summary judgment statute, ORS 18.105 (1975) (enacted in Or Laws 1975, ch 106, § 1) (now ORCP 47), was closely patterned after FRCP 56, *see Garrison v. Cook*, 280 Or 205, 209, 570 P2d 646 (1977) (so stating), the 1986 decisions of the United States Supreme Court construing FRCP 56 are context for the 1995 amendment to ORCP 47 C and bind this court in its construction of the amendment. Defendants emphasize that this court in *Garrison* said that it would give cases interpreting FRCP 56 considerable weight in construing the statutory predecessor to ORCP 47 C. *Ibid.*

Second, according to defendants, if the text and context of the 1995 amendment conclusively demonstrate that the legislature meant to codify existing case law, that case law includes the three United States Supreme Court decisions cited above. They contend that the 1995 amendment reenacted ORCP 47 C in its entirety. Defendants also contend that the reenactment incorporates the decisions of the United States Supreme Court that precede the 1995 amendment as well as this court's decision in *Garrison*, cited above, that federal cases interpreting the federal rule are entitled to great weight in this court's interpretation of the state rule. For that proposition, defendants rely on the rule stated in *State v. Ford*, 310 Or 623, 637 n 21, 801 P2d 754 (1990) ("[W]hen a statute has been construed by the court of last resort of the state and is later reenacted, it is deemed that the legislature has adopted the court's construction unless the contrary purpose is clearly shown."). Defendants argue that, because the 1986 decisions of the United States Supreme Court adopted a construction of FRCP 56 that differs from the construction that this court had adopted regarding ORS 18.105 (1975) and ORCP 47 C, an ambiguity arises that necessitates an examination of legislative history. *See PGE*, 317 Or at 611 (if, but only if, the statutory text and context fail to make the legislature's intention clear, court will consider legislative history).

■ ■ Defendants' arguments are incorrect. We disagree with defendants' contention that the legislature's addition of one sentence to ORCP 47 C also constituted a reenactment of the balance of that rule. *Allison v. Hatton*, 46 Or 370, 372, 8 P 101 (1905), states the applicable rule:

> "The rule is that where a section of the statute is amended so as to read 'as follows,' and the section is then set forth with the changes intended to be made, those portions of the old section that are merely copied into the amendment without change are not to be considered as re-enacted or as a new statement of the law, but are to be read as a part of the earlier statute, if in conflict with another law passed after the section amended and before the amendatory act, unless there is a clear manifestation of legislative intention to the contrary. In the absence of such an intention, it is the change or additions incorporated in the section amended only that are to be considered enacted."

Applying *Allison* here, we conclude that the 1995 amendment added one sentence to ORCP 47 C, and that we perceive no clear indication that the legislature also intended, by that action, to reenact ORCP 47 C in its entirety.

■       Defendants' argument also misstates the relevance of the federal cases on which they rely to the 1995 amendment of ORCP 47 C. If the Oregon legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon. *See State v. Cooper*, 319 Or 162, 167-68, 874 P2d 822 (1994) (so holding). In *Taylor v. Baker*, 279 Or 139, 141 n 2, 566 P2d 884 (1977), this court made it clear that, in the present context, the federal cases to which that rule applies are those decided before Oregon enacted its summary judgment statute:

> "Oregon's summary judgment statute, ORS 18.105 (Oregon Laws 1975, ch 106, § 1), is patterned after Rule 56 of the Federal Rules of Civil Procedure. However, subsection (d) of Rule 56 was not adopted by the legislature. * * * Therefore, federal cases interpreting those aspects of Rule 56, other than subsection (d) thereof, and decided prior to the enactment of this state's summary judgment statute, are entitled to great weight." (Citations omitted.)

The 1986 federal cases on which defendants rely did not exist when Oregon enacted ORS 18.105 (1975).

What did exist when the legislature amended the rule in 1995 was the then-current version of ORCP 47 C and

a substantial body of case law from this court that had interpreted that rule. In 1995, the legislature amended *Oregon's* summary judgment rule, not FRCP 56. We already have concluded, tentatively, that the 1995 amendment codifies, and does not alter, this court's decisions construing ORCP 47 C. The 1986 federal decisions cited by defendants create no ambiguity about the meaning of ORCP 47 C, as construed in this court's decisions.

Defendants' arguments do not persuade us that, in reaching that view, we have overlooked important contextual information or that an ambiguity obliges us to resort to legislative history. Defendants present no other argument that indicates that our tentative reading of the 1995 amendment is incorrect. In consequence of the foregoing, we conclude that the 1995 amendment codified, but did not alter materially, the standards regarding summary judgment that this court had expressed in its case law.

■  We proceed to an application of ORCP 47 C, as amended in 1995, to the record of this case. Defendants produced evidence that plaintiff suffered a predisposition to sensitivity to substances inside the car. From that predicate fact, they contend that, at trial, plaintiff would bear the burden to prove that his condition is not idiosyncratic but could be experienced by an identifiable class of consumers. As the Court of Appeals' opinion demonstrates, some courts in other jurisdictions have discussed or adopted the rule that defendants posit, *Jones*, 139 Or App at 254-55, but this court has not done so.

The premise of defendants' argument is that the idiosyncracy of plaintiff's condition—itself a factual question — defeats his claim because no manufacturer or seller could have foreseen that the car might cause such a condition. Even though defendants' argument rests on the idiosyncracy of plaintiff's condition, the record does not demonstrate, let alone establish without contradiction, that plaintiff's predisposition to a substance in the car was idiosyncratic. The record does not eliminate the factual question whether plaintiff's predisposition was an allergy and, if so, whether plaintiff peculiarly was allergic to the cause of the predisposition.

■ Moreover, assuming, *arguendo*, that defendants have identified a factual question on which plaintiff would have the burden at trial, defendants cannot prevail on summary judgment. According to *Seeborg*:

> "The moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. The record on summary judgment is viewed in the light most favorable to the party opposing the motion. *This is true even as to those issues upon which the opposing party would have the trial burden.*" 284 Or at 699 (emphasis added; citations omitted).

To the same effect, *see Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995) (on summary judgment, "the burden falls on [the moving party] even though [the adverse party] would have had the burden of establishing its claims at the time of trial" (citing *Welch v. Bancorp Management Services*, 296 Or 713, 716, 679 P2d 866 (1984) (same rule))).

We conclude that defendants are not entitled to summary judgment. ORCP 47 C, as amended, codifies the holdings of this court's prior cases, without material change. The amendment does not alter the rule from *Seeborg*, *Welch*, and *Hampton Tree Farms* quoted above. The record fails to establish the absence of a triable issue of fact about whether plaintiff's condition was idiosyncratic and that his sensitivity was not shared by an identifiable group of prospective consumers. Consequently, the trial court erred in granting summary judgment.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.