Argued and submitted March 17, affirmed April 14, petition for review denied August 10, 2004 (337 Or 282)

Gary CLARK,
*Appellant,*

*v.*

DSU PETERBILT & GMC, INC.,
an Oregon corporation,
*Respondent.*

0204-03642; A121419

87 P3d 1159

Kevin Keaney argued the cause and filed the briefs for appellant.

David J. Riewald argued the cause for respondent. With him on the brief was Bullard Smith Jernstedt Wilson.

Before Landau, Presiding Judge, and Ortega, Judge, and Kantor, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff appeals a summary judgment dismissing his employment discrimination claim. He argues that the record demonstrates the existence of genuine issues of material fact as to whether he was terminated because his employer, defendant, regarded him as suffering from a disability. We affirm.

■ On review of a summary judgment, we examine the record in the light most favorable to the nonmoving party to determine whether there are genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

In this case, the following facts are not in dispute. Defendant is in the business of truck sales and service. Its President is Jan Yost, and its Vice-President and General Manager is Tom Stassens. Plaintiff worked for defendant for approximately 26 years, working his way through a series of jobs until he became the manager of the body shop, a job that required him to supervise as many as 12 workers. Plaintiff was a good employee and received regular performance bonuses and raises.

In May 2001, plaintiff visited his personal physician because he had developed a lesion on his left leg. The doctor examined the lesion and told plaintiff that it was not dangerous. Meanwhile, during 2001, defendant experienced a decline in both sales of new trucks and repairs of older trucks prompted by a national economic downturn and successful marketing strategies by some of defendant's competitors. Yost began discussing with the company controller the possibility of eliminating positions, including plaintiff's. In the next few months, plaintiff was required to lay off several employees in the body shop.

In November 2001, plaintiff again visited his doctor about the spot on his leg. This time, the doctor told plaintiff that the lesion was malignant and needed to be removed immediately. Plaintiff's wife informed Stassens of the diagnosis and of the need for immediate surgery.

On December 12, 2001, plaintiff made an out-patient visit to a local medical center. A physician excised the growth on defendant's leg, examined the material, and told plaintiff that it was not cancerous, that he was "cancer free," and that he had "a clean bill of health."

Plaintiff returned to work immediately. Several days later, plaintiff reported to both Yost and Stassen the results of the surgery and that the doctor "got it all." At about the same time, plaintiff received an annual bonus.

Plaintiff missed a total of three work days over the course of the previous year because of the growth on his leg. He acknowledged that the growth had not interfered with his job or his ability to perform it, that his activities were not limited in any way by the medical condition, and that his doctors imposed on him no limitations as a result of the condition.

Defendant's business continued to fare poorly. In January 2002, plaintiff laid off four of his own workers because the body shop did not have sufficient business. The total number of body shop employees had declined to five or six. By January 2002, defendant had laid off approximately 25 percent of its workforce.

In mid-January 2002, Yost and Stassens decided that the level of business in the body shop was so low that they could no longer justify paying a manager to run it. They ended plaintiff's employment.

Plaintiff initiated this action for employment discrimination, alleging that he was discharged in violation of ORS 659A.112(1) because defendant regarded him as being disabled. Defendant answered, denying any liability, and moved for summary judgment. The trial court granted the motion and dismissed the complaint.

On appeal, plaintiff argues that the trial court erred in granting the motion because there remains a triable issue of fact as to whether defendant terminated him because it regarded him as being disabled.[1] Plaintiff acknowledges that

---

[1] In his brief on appeal, plaintiff asserts that there are genuine issues of material fact about whether he was fired because he was, in fact, disabled and because employer regarded him as disabled. At oral argument, however, plaintiff stated that "this is not an actual disability case."

there is no direct evidence that defendant regarded him as being disabled, but he insists that the record as a whole permits an inference that that was the reason for the discharge. In particular, plaintiff argues, "the *precise timing* of plaintiff's discharge compels the conclusion—or, more accurately, establishes a triable issue allowing a jury reasonably to find—that plaintiff would have continued employment had he not disclosed his malignant cancer." That is so, he insists, because plaintiff was competently performing his job and because there were other—nondisabled—employees who could have been discharged at the time.

Defendant argues that plaintiff's claim fails as a matter of law because there is a complete absence of evidence that defendant regarded him as being disabled at the time of termination or that defendant terminated him because of a perceived disability. It is undisputed, defendant emphasizes, that plaintiff had reported that the lesion on his leg turned out to be benign and that he was "cancer free" and had a "clean bill of health." Moreover, defendant argues, there is no evidence that, whatever the state of plaintiff's health, it substantially interfered with a major life activity or that defendant regarded it as having that effect. Defendant contends that the undisputed evidence is that plaintiff took a total of three sick days to visit his doctor about the spots on his leg and that, otherwise, plaintiff's condition in no way interfered with the performance of his job, much less a broad class of jobs.

ORS 659A.112(1) (2001) provides that "[i]t is an unlawful employment practice for any employer to * * * discharge from employment * * * because an otherwise qualified person is a disabled person." The statute defines a "disabled person" as "a person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment." ORS 659A.100(1)(a) (2001). An impairment "substantially limits" a "major life activity" if it "renders the person unable to perform a major life activity that the average person in the general population can perform" or "significantly restricts the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or

duration under which the average person in the general population can perform the same major life activity." ORS 659A.100(2)(d) (2001).[2]

ORS 659A.805(1) authorizes the Bureau of Labor and Industries to promulgate administrative rules to implement the foregoing statute. Pursuant to that statutory authorization, the agency promulgated OAR 839-006-0205(6)(b) (2002), which provides:

> "To be substantially limited in the major life activity of working, a person must be significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the ability of an average person with comparable skill, experience, education or other job-related requirements needed to perform those same positions."

OAR 839-006-0212(1) (2002) sets out additional factors to consider in determining whether an individual is substantially limited in a major life activity:

> "(a)   The nature and severity of the impairment;
>
> "(b)   The [length of time] an impairment persists or is expected to persist; and
>
> "(c)   The permanent or expected long-term effect resulting from the impairment."

*See generally Lansford v. Georgetown Manor, Inc.*, 192 Or App 261, 271-73, 84 P3d 1105 (2004), *adh'd to as modified*, 193 Or App 59, 88 P3d 305 (2004) (describing requirements).

In this case, there is no evidence that defendant regarded plaintiff as suffering from a disability when it terminated him from its employment. The evidence is undisputed that, for a three-week period, although defendant understood that plaintiff had a malignant growth on his leg that needed to be removed, the existence of the mole in no way interfered with his job, much less a broad range of jobs. It is also undisputed that, a month before defendant decided to eliminate plaintiff's position, plaintiff told Yost and

---

[2] ORS 659A.100 was amended by the 2003 Legislative Assembly in a manner that does not affect this decision. Or Laws 2003, ch 254, § 1.

Stassens that he was "cancer free" and had been given a "clean bill of health."

Plaintiff insists that, even though he told Yost and Stassens that he was cancer free, a reasonable jury could find that defendant fired him because of the "stigma" attached even to the possibility that he had cancer. In other words, plaintiff argues that it could be inferred that Yost and Stassens did not believe the diagnosis that plaintiff himself reported to them. There is simply no evidence to support such an inference.

We conclude that the summary judgment record, viewed in the light most favorable to plaintiff, does not demonstrate the existence of a genuine issue of material fact. Defendant is entitled to judgment as a matter of law.

Affirmed.