Argued and submitted September 6, 2001, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court for further proceedings June 12, 2003

Debbie KAHN,
*Petitioner on Review,*

*v.*

PROVIDENCE HEALTH PLAN,
an Oregon non-profit corporation,
*Respondent on Review.*

(CC 9710-08059; CA A103759; SC S48091)

71 P3d 63

Hank McCurdy, Portland, argued the cause and filed the petition for petitioner on review.

Paul R. Duden, Portland, argued the cause for respondent on review.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## GILLETTE, J.

This is an action by an injured worker (plaintiff) against defendant, a managed care organization (MCO)[1] that, under an arrangement with plaintiff's employer's workers' compensation insurer, was responsible for making recommendations respecting the kind of medical care that plaintiff should receive for her injury. The complaint alleged two claims, one for negligence and one for breach of contract, both of which were based on defendant's refusal to approve an operation that plaintiff's physician had recommended. The trial court granted summary judgment for defendant, holding that plaintiff's sole remedy was under the workers' compensation statutes, as provided in ORS 656.260(6).[2] The Court of Appeals agreed. *Kahn v. Providence Health Plan*, 170 Or App 602, 13 P3d 556 (2000). We allowed plaintiff's petition for review to consider whether, under the circumstances alleged, an injured worker may bring an action for damages arising out of an MCO's conclusion that a proposed medical treatment is unnecessary. We conclude, on grounds somewhat different than those that the Court of Appeals stated, that the relevant statute appears to preclude such an action.

■ When, as here, we review a decision granting summary judgment, we take the facts in the record in the light most favorable to the nonmoving party—in this case, plaintiff. *See Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (stating rule). The following facts are not in dispute. Plaintiff suffered a compensable back injury in 1977

---

[1] An MCO is a health care group organized and certified as provided in ORS 656.260(1) to (5) "to provide managed care to injured workers for injuries and diseases compensable under [the workers' compensation statutes]." ORS 656.260(1). The director of the Department of Consumer and Business Services certifies MCOs to provide managed care under a plan. Before certifying an MCO's plan, the director must find that certain requirements pertaining to quality of care, nondiscrimination, service costs and utilization, methods of review, and other criteria are met. ORS 656.260(4).

[2] ORS 656.260(6) provides that "[a]ny issue concerning the provision of medical services to injured workers subject to a managed care contract * * * shall be subject solely to review by the director [of the Department of Consumer and Business Services]."

and underwent major back surgery at that time. Plaintiff had no significant problems with her back for the next 17 years. In 1994, however, plaintiff began to experience back pain, which gradually increased in severity. Plaintiff eventually sought medical treatment and also sought to reopen her original workers' compensation claim.

In September 1996, plaintiff's employer's workers' compensation insurer, Industrial Indemnity, informed plaintiff that her claim for reopening had been accepted and that she had been enrolled in defendant MCO for purposes of that claim. Shortly thereafter, in November, Industrial Indemnity advised plaintiff that defendant had authorized her doctor, Golden, to treat her back injury.

Golden proposed to treat plaintiff's back problems with surgery. Pursuant to its contract with Industrial Indemnity, defendant evaluated Golden's surgery proposal through a process known as "utilization review." In that review process, defendant concluded that the proposed surgery was not medically necessary and, therefore, declined to recommend it. Defendant issued its decision to that effect in January 1997.

Although the workers' compensation statutes provide an administrative review process that a dissatisfied worker may use to challenge decisions like defendant's decision in this case, *see* ORS 656.260(14)-(16) (setting out procedure), plaintiff did not avail herself of that process. Nonetheless, for reasons that are not clear from the record, Industrial Indemnity decided to authorize and pay for the surgery. The surgery was performed in March 1997—about nine weeks after defendant's initial decision[3]—and, according to plaintiff, "greatly improved" her condition. It is the delay between the initial decision and the subsequent surgery that lies at the heart of this case.

---

[3] Plaintiff's complaint indicates that her doctors appealed defendant's decision and that defendant issued a final decision, affirming its earlier decision, sometime in February. That later decision is not in the record.

Following her surgery, plaintiff filed the present action against defendant for negligence and breach of contract, seeking damages for extreme pain, continued disability, and depression that allegedly was so severe that it required hospitalization,[4] all allegedly suffered because of the delay that was occasioned by defendant's decision. Defendant moved for summary judgment, arguing, *inter alia*, that (1) a workers' compensation statute, ORS 656.260(14), provided plaintiff's sole remedy for her injuries; (2) ORS 656.018(3) exempts defendant from liability as a "contracted agent" of plaintiff's employer's insurer; and (3) defendant has no contractual relationship with plaintiff that could form the basis of a breach of contract claim. The trial court granted defendant's motion, explaining that, as a matter of law, "plaintiff's exclusive remedy for injuries related to a service utilization review is under the workers['] compensation statutes."

On plaintiff's appeal, the Court of Appeals affirmed. That court held that, regardless of how plaintiff characterizes her claims, both arise out of defendant's service utilization decision which, under ORS 656.260(6), is subject "solely" to "review" by the Director of the Department of Consumer and Business Services "or as otherwise provided in this section." The Court of Appeals concluded that, because no other provision of the statute fairly could be read to provide for review of such a decision by means of a civil action for damages, the trial court's conclusion that plaintiff's remedy lies exclusively under the workers' compensation statutes was correct. *Kahn v. Providence Health Plan*, 170 Or App at 606-08.

Before this court, plaintiff argues that the Court of Appeals oversimplified her claims as merely seeking "review" of the correctness of defendant's service utilization decision. Plaintiff contends that, in fact, she is seeking *damages*, under common-law claims for medical malpractice and breach of contract, for the pain and suffering that she was forced to

---

[4] Although it is not clear from the complaint, plaintiff argues to this court that her negligence claim essentially is a common-law medical malpractice claim against defendant in its capacity as her physician. Respecting the breach of contract claim, she argues that she is a third-party beneficiary of defendant's contract with Industrial Indemnity.

endure because of the delay that defendant's decision engendered. She argues that ORS 656.260(6), the statute on which the Court of Appeals relied, does not address such issues or preclude a civil action for damages.

■■ We begin by noting that the Court of Appeals incorrectly treated the provisions of ORS 656.260(6) as dispositive. That statute is a procedural one that sets out the route that a dissatisfied claimant must follow through the apparatus of the workers' compensation system to obtain review of a utilization review decision. That statute is not substantive; it does not forbid actions such as the one that plaintiff brought here. However, we further note that, although plaintiff objects to the Court of Appeals' characterization of her claims, she does not deny that the record made on summary judgment shows that both claims arose out of defendant's conclusion, made in the context of a "service utilization review," that the surgery that plaintiff's doctor proposed was not medically necessary. In our view, that fact implicates another, related subsection of ORS 656.260 that is substantive.

ORS 656.260(8) provides:

> "A person participating in service utilization review, quality assurance, dispute resolution or peer review activities pursuant to this section shall not be examined as to any communication made in the course of such activities or the findings thereof, *nor shall any person be subject to an action for civil damages for affirmative actions taken or statements made in good faith*."

(Emphasis added.) Defendant is a "person" for the purposes of that statute. *See* ORS 656.005(23) (respecting ORS chapter 656, " '[p]erson' includes partnership, joint venture, association, limited liability company and corporation"). Thus, by the express terms of ORS 656.260(8), defendant is immune from this action for civil damages if defendant's determination that plaintiff's proposed surgery was unnecessary was "participation" in a service utilization review, was an "affirmative action[ ]," and was "taken * * * in good faith." On the present record, there is no evidentiary question whether defendant participated in service utilization review or whether defendant acted in bad faith; therefore, plaintiff's

claims against defendant fail if defendant's decision was an "affirmative action[ ]."

In our view, it was. The Workers' Compensation Law, ORS chapter 656, contains no definition of the term "affirmative actions." We therefore assume that, in using it, the legislature intended that it be understood in the ordinary, dictionary sense. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (prescribing that methodology for identifying legislative intent respecting words of common usage).

"Action" means "* * * 3. The process of doing: exertion of energy: PERFORMANCE * * *[;] 4. a voluntary act that will manifest itself externally." *Webster's Third New Int'l Dictionary* 21 (unabridged ed 1993). Without question, the decision that defendant made to recommend against surgery for plaintiff was an "action" under that definition, *i.e.*, it was a "voluntary act * * * manifest[ing] itself externally" in an opinion, and forming and offering such opinions was precisely what defendant had agreed that it would do for Industrial Indemnity.[5]

Read in context, the statutory requirement that the action be "affirmative" does not change our analysis. Although that word might, in different circumstances, be a reference only to the *outcome* of an opinion, *i.e.*, it could be a reference only to a decision to *approve* a proposed medical procedure, the word cannot be read that way when it is used in connection with the phrase "actions taken." Conceptually, the phrase "actions taken" is broader than a decision to approve (or even to disapprove) something. That is, the term is to be read in contrast with a failure to decide or other neglect. That broader reading of the term being the only tenable one,[6] it follows that there is no factual basis on this record that would remove plaintiff's case from the immunity

---

[5] All the evidence submitted in connection with the motion for summary judgment established that defendant acted solely in a consultative capacity in this case.

Although plaintiff argues the point strenuously, this is not a case in which there is any evidence that defendant itself was treating plaintiff. We therefore express no opinion whether that additional fact, if it were present, would affect our analysis respecting the applicability of ORS 656.260(8).

[6] We have found no other statutory provision that casts doubt on the foregoing construction of "affirmative" or on our reading of the phrase "affirmative actions."

provided in ORS 656.620(8). That is, nothing in this record raises any factual issue whether defendant's conduct amounted to something more than an "affirmative action[ ] taken * * * in good faith."

We recognize that the foregoing conclusion means that ORS 656.260(8) grants immunity to defendant on the facts shown here. However, that is the extant legislative choice, as shown by the statutory wording. If that choice is to be changed or modified, that, too, must be a legislative choice. We hold that, on the present evidentiary record, defendant is immune from the action that plaintiff has brought against it in this case by virtue of the immunity that ORS 646.620(8) confers.

Ordinarily, the foregoing holding would dispose of the case. However, we are reluctant to direct that result here, because the specific statutory subsection on which we rely— ORS 656.260(8)—was not the ground on which either the trial court or the Court of Appeals decided this case.[7] Although it is not clear to us how plaintiff might avoid the immunity conferred by that statute, we do not believe that it would be just to deny her at least the opportunity to try. We therefore remand the case to the trial court with instructions to consider any factual or legal argument that plaintiff may wish to assert respecting the application of ORS 656.260(8) to her case.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

---

[7] The Court of Appeals noted the existence of the statute, but did not pursue it. *Kahn v. Providence Health Plan*, 170 Or App at 607.